**UNITED STATES BANKRUPTCY COURT**                **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 22-10436 (JLG) |
| Reggiani Lighting USA Inc., | : | Chapter 7 |
| | : | |
| Debtor. | : | |

-----------------------------------------------------------------x

| | | |
|---|---|---|
| Yann Geron, Chapter 7 Trustee of the Bankruptcy | : | |
| Estate of Reggiani Lighting USA Inc., | : | |
| | : | |
| Plaintiff, | : | Adv. P. No. 24-01339 (JLG) |
| | : | |
| v. | : | |
| | : | |
| John Savoretti, | : | |
| Defendant. | : | |

-----------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER
### GRANTING THE TRUSTEE'S APPLICATION FOR AN ORDER,
### PURSUANT TO FED. R. BANKR. P. 9019, APPROVING A SETTLEMENT
### BY AND BETWEEN THE TRUSTEE AND JOHN SAVORETTI

**A P P E A R A N C E S :**

GERON LEGAL ADVISORS LLC
*Counsel for Yann Geron, Chapter 7 Trustee*
370 Lexington Avenue, Suite 1208
New York, New York 10017
By:    Yann Geron
        Jeannette Litos


RAINES FELDMAN LITTRELL LLP
*Counsel for John Savoretti*
1350 Avenue of the Americas, Floor 22
New York, New York 10019
By:    Carollynn H.G. Callari

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

The matter before the Court is the Trustee's motion (the "Motion")[2] for an order, pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019"), approving the terms of a settlement agreement (the "Settlement Agreement"),[3] by and between the Trustee and the Defendant, resolving the claims in this Adversary Proceeding. There were no responses to the Motion.

On June 25, 2025, the Court conducted a hearing on the Motion. The Trustee and the Defendant appeared at the hearing through their respective counsel. The Court heard argument from the Trustee and the Defendant. For the reasons set forth herein, the Court grants the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] Capitalized terms shall have the meanings ascribed to them herein or in the Motion and Complaint. References to "AP ECF No.    " are to documents filed on the electronic docket of this Adversary Proceeding No. 24-01339. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 22-10436.

[2] *Trustee's Application for an Order, Pursuant to Fed. R. Bankr. P. 9019, Approving a Settlement by and Between the Trustee and John Savoretti*, AP ECF No. 33 at 1-7.

[3] *Settlement Agreement*, AP ECF No. 33 at 8-14.

2

## BACKGROUND

On April 6, 2022 (the "Petition Date"), Reggiani Lighting USA Inc. (the "Debtor") filed a

voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court (the "Chapter 7

Case").[4] On April 7, 2022, Yann Geron (the "Trustee") was appointed as the interim trustee of the

Debtor's estate.[5]  On May 17, 2022, he presided over the meeting of the creditors pursuant to

section 341(a) of the Bankruptcy Code and, by operation of section 702(d), qualified as permanent

trustee of this Chapter 7 Case. The case was initially filed as a no asset case, but on December 31,

2024, the Trustee requested the Clerk of Court send notice to all creditors that this is now an asset

case.[6] On January 1, 2025, the Clerk of Court notified the creditors of the possible payment of

dividends and that the bar date for filing a proof of claim was April 7, 2025.[7] Ten unsecured claims,

totaling $100,736.72, were filed, two of those claims, aggregating $19,38.17, assert priority status

under section 507(a)(8) of the Bankruptcy Code.

### The Complaint

Prior to the Petition Date, the Debtor operated a custom lighting company which designed,

built, and installed custom light fixtures in residential and commercial settings. John Savoretti (the

"Defendant") served as the Debtor's President.

On April 8, 2024, the Trustee commenced this adversary proceeding (the "Adversary

Proceeding") by filing a complaint (the "Complaint")[8] against the Defendant to avoid and recover

wire transfers totaling $978,586.07 from the Debtor's bank account to the Defendant (collectively,

---

[4] *Chapter 7 Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.

[5] *Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline*, ECF No. 2.

[6] *Letter to Clerk Requesting Claims Bar Date*, ECF No. 29.

[7] *Notice of Possible Payment of Dividends and of Last Date to File Claims*, ECF No. 30.

[8] *Complaint Against John Savoretti*, AP ECF No. 1.

the "Transfers," each a "Transfer"). The Trustee alleges that the Debtor transferred $727,936.55 during the period of March 26, 2019, through March 26, 2021 (the "Pre-Petition Transfers"), $185,166.56 in the one-year period prior to the Petition Date (the "Preferential Transfers"), and $65,482.96 during the post-petition period of April 15, 2020, through May 27, 2022 (the "Post-Petition Transfers"). Complaint ¶ 15.

The Trustee alleges that each Transfer is a transfer of estate property, made to and for the Defendant's benefit. Complaint ¶¶ 19-20, 27-28, 35-36. He contends that the Debtor received less than fair consideration in exchange for each Transfer. *Id*. ¶¶ 22, 30, 38. He also claims that the Debtor was insolvent at the time of each Transfer, or became insolvent as a result of the Transfer, *id*. ¶ 24, or was engaging in a transaction with an unreasonably small amount of capital, *id*. ¶ 32, and intended to incur debts beyond its ability to pay as they matured, *id*. ¶ 40. The Trustee alleges that the Defendant is an insider and creditor of the Debtor, and the Preferential Transfers allowed him to recover more than he would have received if the case was a case under chapter 7, the Preferential Transfers had not been made, and the Defendant received payments of his debt to the extent provided by the provisions of the Bankruptcy Code. *Id*. ¶¶ 43, 47-48, 50.

The Trustee asserts six claims for relief against the Defendant: (i) to avoid and recover the Transfers as fraudulent conveyances by an insolvent, pursuant to 11 U.S.C. §§ 544(b) and 550 and New York Debtor and Creditor Law ("NY DCL")[9] § 273, *id*. ¶¶ 18-25, (ii) to avoid and recover

---

[9] On April 4, 2020 (the "UVTA Effective Date"), the NY DCL was amended to adopt the Uniform Voidable Transactions Act (the "NY UVTA"). It replaces the Uniform Fraudulent Conveyance Act (the "NY UFCA"). The NY UVTA is expressly not retroactive and applies only to transfers made or obligations incurred on or after the UVTA Effective Date. *See Mendelsohn v. Nationstar Mortgage (In re Hong)*, No. 8-19-72287, Adv. No. 8-20-08003, 2022 WL 17980826, at *1 n.2 (Bankr. E.D.N.Y. Dec. 28, 2022); *accord Jalbert v. Flom (In re BICOM NY, LLC)*, 633 B.R. 25, 37 (Bankr. S.D.N.Y. 2021) (NY UVTA is not retroactive and applies only to transfers that have occurred on or after the UVTA Effective Date). Nineteen of the Pre-Petition Transfers arose prior to the UVTA Effective Date, and twenty arose after the UVTA Effective Date. *See* Complaint ¶ 15. The Preferential Transfers and Post-Petition Transfers arose after the UVTA Effective Date. *Id*. Absent a settlement, the Parties will be required to litigate under two similar, but separate standards. *See, e.g., Anhui Aido Garment Co., Ltd. v. Stern*, No. 24-CV-1572, 2025 WL

the Transfers as fraudulent conveyances, pursuant to 11 U.S.C. §§ 544(b) and 550 and NY DCL § 274, *id.* ¶¶ 26-33, (iii) to avoid and recover the Transfers as fraudulent conveyances, pursuant to 11 U.S.C. §§ 544(b) and 550 and NY DCL § 275, *id.* ¶¶ 34-41, (iv) to avoid and recover the Preferential Transfers, pursuant to 11 U.S.C. §§ 547 and 550, *id.* ¶¶ 42-51, (v) to recover the Post-Petition Transfers as unauthorized post-petition payments, pursuant to 11 U.S.C. §§ 549 and 550, *id.* ¶¶ 52-56, and, (vi) in the alternative, to recover the Transfers as unjust enrichment at the expense of the estate, *id.* ¶¶ 57-63.

**<u>Defendant's Answer and Affirmative Defenses to the Complaint</u>**

Pursuant to a series of stipulations,[10] the Parties agreed to extend the Defendant's time to respond to the Complaint from May 9, 2024, to January 17, 2025. During that period, the Parties engaged in formal and informal discovery and settlement discussions. In the Parties' December 23, 2024 status letter to the Court, the Trustee advised that "[p]rior to the November 13th conference, the Trustee extended a settlement offer to the defendant as well as a request for further documents in support of Mr. Savoretti's alleged defenses."[11] By January 22, 2025, Defendant's counsel had served the Trustee with "an offer of judgment and a number of formal discovery requests."[12] However, the Parties were unable to resolve the Adversary Proceeding.

On February 7, 2025, the Defendant filed his answer and affirmative defenses to the Complaint (the "Answer").[13] In it, he denies the allegations asserted in the Complaint as

---

1663860, at *6 (S.D.N.Y. June 12, 2025) (analyzing transfers that occurred prior to and after the UVTA Effective Date under the NY UFCA and NY UVTA, respectively).

[10] *See Stipulation Extending Defendant's Time to Answer or Otherwise Respond to Complaint,* AP ECF Nos. 4, 8, 10, 11, 13, 14, 17.

[11] *Joint Status Letter in connection with initial pretrial conference on November 13, 2024,* AP ECF No. 18.

[12] *Joint Status Letter*, AP ECF No. 23.

[13] *Answer and Affirmative Defenses to Complaint*, AP ECF No. 24.

unfounded. Answer at 4. He contends that he was an employee of the Debtor, serving as its President, and the Transfers were made to him in the ordinary course of business, pursuant to his employment agreement, and in satisfaction of his claims for compensation and reimbursement of out of pocket expenses incurred for the Debtor's benefit. *Id*. at 2-3. He contends that he provided reasonably equivalent value for each Transfer and was not unjustly enriched by any of the Transfers. *Id*. He denies that the Debtor was insolvent, became insolvent, or engaged in a transaction resulting in unreasonably small capital, at any of the relevant times. *Id*. ¶¶ 24, 32. The Defendant says that the Debtor's parent company, Reggiani SpA, guaranteed to provide the financing for the Debtor to meet its then current obligations. *Id*. ¶ 32. He maintains that the Transfers were not of estate property because the Debtor received funds from Reggiani SpA, which were "earmarked" for payments to be made by the Debtor, including certain Transfers to the Defendant. *Id*. at 2, ¶ 46.

Moreover, he denies that any of the Preferential Transfers are voidable transfers under section 547 of the Bankruptcy Code because he filed UCC-1 Financing Statements to secure payment of the amounts the Debtor owed to him, and therefore, he would have received the same funds post-petition had these payments not been made pre-petition. *Id*. ¶ 50. Finally, he denies that the Trustee's claims for the Post-Petition Transfers have merit, because his employment continued post-petition. *Id.* ¶ 55.

The Defendant asserts ten affirmative defenses: (i) the Complaint fails to state a claim on which relief can be granted, *id*. ¶ 64, (ii) the Complaint fails because the Trustee did not conduct due diligence prior to filing the Complaint, *id*. ¶ 65, (iii) the Trustee must prove the element of insolvency of his claims in each instance, *id*. ¶ 66, (iv) the claims are barred by the defense of new value, *id*. ¶ 67, (v) the claims are barred by the ordinary course of business defense, *id*. ¶ 68, (vi)

6

the claims are barred by the contemporaneous exchange defense, *id*. ¶ 69, (vii) the claims are barred by the earmarking doctrine, *id*. ¶ 70, (viii) certain Transfers are protected as priority wage claims, *id*. ¶ 71, (ix) the Defendant would be entitled to set-off for his contributions and non-cash value to the Debtor, *id*. ¶ 72, and (x) the claims are barred by the defense of equitable doctrines of laches, waiver, and estoppel for the Trustee's failure to marshal and preserve the Debtor's books and records, *id*. ¶ 73.

### The Rule 26 Report

On February 15, 2025, the Defendant submitted a report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure (made applicable to this Adversary Proceeding by Rule 7026 of the Federal Rules of Bankruptcy Procedure) (the "Rule 26 Report"),[14] of the Parties' February 14, 2025 conference. In the report, the Defendant maintains his defenses and argues that the Trustee cannot meet his burden of proof on the elements of his claims, including proof of insolvency at the time of each Transfer. Rule 26 Report ¶ B(1). He states that he does not believe the Trustee is in possession of the Debtor's books and records and, therefore, it may be necessary to subpoena former employees and other third parties to obtain information relevant to his defenses to the Complaint. *Id*. ¶ B(2). He reserves all rights to argue for dismissal based on spoilation, laches, or other grounds. *Id*. The Defendant states that he seeks the entry of a customary protective order to protect his personal financial information and that he may seek discovery regarding the Debtor's insolvency and the Trustee's due diligence investigation, among other matters. *Id*. ¶ F(1). He also reports that "[t]he parties have exchanged initial settlement proposals. The parties continue to discuss possible settlement." *Id*. ¶ H(1).

---

[14] *Defendant's Rule 26(f) Report*, AP ECF No. 25.

**The Scheduling Orders**

On February 18, 2025, the Court entered a joint scheduling order (the "Scheduling Order").[15] On March 21, 2025, the Parties sought Court approval to stay the Scheduling Order's deadline to serve initial discovery requests, stating they had made "considerable progress" and were "engaged in productive settlement discussions" and wanted to limit litigation costs.[16] The Court granted the request and entered a revised Scheduling Order.[17] By April 4, 2025, the Parties "reached an agreement in principle" and were "finalizing settlement terms" to present for the Court's approval.[18]

**The Settlement Agreement**

On May 29, 2025, the Parties executed the Settlement Agreement, subject to and conditioned upon the entry of an order of the Court approving the terms of the agreement (the "Approval Order"). Settlement Agreement ¶ 2. The Settlement Agreement provides that, "[w]ithin 30 days of entry of the Approval Order, the Defendant shall pay $100,000.00 (the "Settlement Payment") via wire transfer to [the Trustee]." *Id*. ¶ 3. If the Defendant fails to make the Settlement Payment in compliance with the terms of the agreement, time being of the essence, the Trustee may serve the Defendant with a notice of default. *Id*. ¶ 4. If the Defendant fails to cure such default within fourteen calendar days from completion of service of the notice, the Trustee shall be entitled to enter a judgment against Defendant in the amount of $185,000 by service of notice of presentment upon the Defendant by its counsel. *Id*.

---

[15] *Joint Scheduling Order*, AP ECF No. 26.

[16] *Joint Letter Seeking Two Week Stay of Discovery Deadline,* AP ECF No. 27.

[17] *Memorandum Endorsed Order*, AP ECF No. 28; *Revised Joint Scheduling Order*, AP ECF No. 30.

[18] *Joint Letter Seeking 45-day Extension of All Remaining Deadlines in the Revised Scheduling Order Pending Settlement*, AP ECF No. 29.

The Settlement Agreement further provides that upon entry of the Approval Order and the Trustee's receipt of the Settlement Payment in full: (i) the Trustee, the Debtor, and the Debtor's estate, their successors, assigns, and predecessors, release the Defendant from all claims and causes of action relating to the Transfers, *id*. ¶ 5, (ii) the Defendant releases the Trustee, the Debtor, and the Debtor's estate from any and all claims relating to the Transfers and shall not file any proof of claim in the Chapter 7 Case as a result of the Settlement Payment, *id*. ¶ 6, and (iii) the Trustee shall "promptly file a letter request to close the Adversary Proceeding, which shall be dismissed with prejudice," *id*. ¶ 7.

### **The Motion**

The Trustee submits that the terms of the Settlement Agreement "are fair, reasonable, and in the best interests" of the estate and its creditors, "such that the Settlement Agreement should be approved." Motion ¶¶ 2, 11. He contends that the proposed resolution "satisfies each and all the factors necessary for Court approval" and that the Settlement Agreement is the "direct result of the Parties' good-faith, arm's-length dealings." *Id*. ¶ 16. The Trustee states that he has considered and weighed "the strength of the Defendant's defenses and the potential costs and risks of protracted litigation" against "the potential recovery against the Defendant at trial." *Id*. Based on the information available to the Trustee, he contends that the settlement "represents a fair recovery to the estate on account of the Transfers." *Id*. He requests the Court approve the Settlement Agreement. *Id*. ¶ 17.

### The Hearing

At the hearing on the Motion, the Trustee and his counsel explained that after carefully analyzing the Transfers, the Trustee determined that the Defendant had strong defenses to claims against the Pre-Petition Transfers, and accordingly, focused on the recovery of the Preferential and Post-Petition Transfers. The Trustee explained that the Debtor's records are limited, requiring reliance on the Defendant to provide documentation supporting his defenses. Based on the Defendant's document production, including an employment agreement, the Trustee determined that there is litigation risk associated with the NY DCL fraudulent conveyance claims, leading him to narrow his focus to the Preferential and Post-Petition Transfer claims.

Upon review of the documentation received from the Defendant, the Trustee determined there could be support to apply a new value credit to any potential recovery for the Preferential Transfers. The Trustee also considered that the temporary COVID provision under section 547(j) of the Bankruptcy Code was in place during some of the Transfers, which affected his analysis.

With respect to the Post-Petition Transfers, the Trustee assessed that there were insufficient defenses because no authorization existed to pay those Transfers. However, the Trustee made a small allowance for what the Defendant claimed would be a priority wage claim and considered this reduction in analyzing the settlement offer.

The Trustee represented that, after considering the asserted defenses, approximately $185,000 in transfers would be subject to litigation—the amount specified as a default judgment if the Defendant fails to make the Settlement Payment. The Trustee estimates litigation expenses would be approximately $125,000, factoring in the costs of discovery, motion practice, and trial preparation. He projects litigation would require seven to twelve months before trial, with

additional complications arising from the Defendant's overseas residence, including difficulties in serving interrogatories and conducting depositions.

The Trustee also considered the Defendant's ability to pay and access to funds. He received assurances from the Defendant's counsel regarding the Defendant's financial status. The Defendant is retired and living overseas with limited cash flow, but has funds to complete the settlement promptly. The Trustee considered enforcement challenges, given the Defendant's overseas residence and limited financial resources. The Trustee determined that the $100,000 Settlement Payment represented a significant amount for the Defendant and constitutes fair value considering the litigation risks and collection difficulties.

The Defendant confirmed the extensive negotiations between the parties, noting that both sides were adamant about their respective positions. The Defendant provided documentation to support his defenses, including employment agreements, which the Defendant contends refuted the fraudulent conveyance allegations. Defense counsel acknowledged that, while the Defendant disputes the allegations, a settlement of $100,000 against potential recovery of less than $200,000 is reasonable, albeit difficult for the retired Defendant with limited resources.

## LEGAL PRINCIPLES

"Settlements are generally favored in bankruptcy because they 'minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Allard*, No. 18-14092, 2021 WL 2546668, at *6 (Bankr. S.D.N.Y. June 21, 2021) (quoting *HSBC Bank USA v. Fane (In re MF Glob. Inc.)*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012)). Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).[19]

To approve a settlement under Rule 9019, the Court "must determine that the settlement is fair, equitable, and in the best interests of the estate." *In re 305 E. 61st St. Grp. LLC*, No. 19-11911, 2022 WL 16749111, at *2 (Bankr. S.D.N.Y. Nov. 7, 2022). "The burden is on the settlement proponent to persuade the court that the settlement is in the best interests of the estate." *In re MF Glob. Inc.*, 466 B.R. at 248. Ultimately, "the decision to accept or reject a compromise or settlement is within the sound discretion of the bankruptcy court." *In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 303 (Bankr. S.D.N.Y. 2011), *aff'd*, No. 10-B-15973, 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011), *aff'd*, 487 F. App'x 663 (2d Cir. 2012) (unpublished).

When evaluating a proposed settlement, the Court must make an independent inquiry of the facts, to make "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment." *Prot. Comm. for*

---

[19] The Court's authority to approve a settlement under Rule 9019 is pursuant to section 105 of the Bankruptcy Code, which grants the Court authority "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

*Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). However, the Court need not conduct a "mini trial" of the underlying merits, and should consider the business judgment of the Trustee and the general public policy favoring settlements. *In re Adelphia Communs. Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005); *O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, No. 08-12547, 2013 WL 1821592, at *4 (Bankr. S.D.N.Y. Apr. 30, 2013) ("A court may exercise its discretion 'in light of the general public policy favoring settlements.' In evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and the professionals." (quoting *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998)); *see also In re MF Glob. Inc.,* No. 11-2790, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012) ("[T]he business judgment of the [trustee] in recommending the settlement should be factored into the court's analysis.").

The Court's responsibility "is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *In re Stearns Holdings, LLC*, 607 B.R. 781, 793 (Bankr. S.D.N.Y. 2019) (the standard for approval under Rule 9019 is whether the settlement "falls above the lowest point in the range of reasonableness").

In this district, in assessing whether a settlement is fair and equitable, courts apply the factors outlined by the Second Circuit in *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.3d 452, 455 (2d Cir. 2007) (the "Iridium Factors"). *See Nuevo Pueblo, LLC v. Napolitano (In re Nuevo Pueblo, LLC)*, 608 F. App'x 40, 41 (2d Cir. 2015) (unpublished) ("In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, a court asks whether the settlement is 'fair and equitable,' considering the [Iridium

Factors].”); *In re Ambac Fin. Grp.*, 457 B.R. at 303 (“here in the Southern District of New York we apply the Iridium [F]actors in evaluating a proposed settlement”). The Iridium Factors include:

> (1) the balance between the litigation’s possibility of success and the settlement’s future benefits;

> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

> (3) the paramount interests of the creditors, including each affected class’s relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

> (4) whether other parties in interest support the settlement;

> (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

> (6) the nature and breadth of releases to be obtained by officers and directors; and

> (7) the extent to which the settlement is the product of arm’s length bargaining.

*In re Iridium Operating LLC,* 478 F.3d at 462 (citation modified). If the Court finds that “most or all of the [Iridium Factors] are satisfied, the settlement should be approved.” *In re 305 E. 61st St.*, 2022 WL 16749111, at *3. Below, the Court applies the Iridium Factors to the Settlement Agreement.

## ANALYSIS

### (1) The balance between the litigation's possibility of success and the settlement's future benefits

The first Iridium Factor "compares the benefits offered by the Settlement against the likelihood of success in further litigation." *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009); *see also Geltzer v. Original Soupman Inc. (In re Soup Kitchen Int'l Inc.)*, 506 B.R. 29, 40 (Bankr. E.D.N.Y. 2014) ("In applying the first Iridium factor, it is necessary . . . to compare the benefits afforded to the estate by the Settlement with the recovery that would be available through continued pursuit of the Trustee Action, taking into consideration the possibility of success in that action."). The Trustee "believes he would ultimately prevail on avoiding most or all of the Transfers," but notes that "the substantive defenses raised by the Defendant, the risks and costs of pursuing such causes of action, and the risks and costs of collection on any judgment that may be awarded, risk significantly reducing any favorable result to the Debtor's estate from litigating this matter through trial." Motion ¶ 16. Specifically, the Trustee clarified on record that he was focused on the Preferential Transfers and Post-Petition Transfers. As such, the Court will focus on those claims in its assessment.

In the Complaint, the Trustee seeks to avoid and recover the Preferential Transfers under section 547 of the Bankruptcy Code. To demonstrate grounds for relief under section 547, the Trustee must establish, based on reasonable due diligence, the following for each Transfer:

> (1) the transfer is of an interest of the debtor in property;
>
> (2) to or for the benefit of a creditor;
>
> (3) on account of an antecedent debt;
>
> (4) made while the debtor was insolvent;

(5) within 90 days of bankruptcy or within a year of bankruptcy if the creditor was an insider; and

(6) the transfer enabled the creditor to receive more than it would have received in a chapter 7 liquidation had the transfer not taken place.

*Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 180 (2d Cir. 2007) (citing 11 U.S.C. § 547(b)); *accord Davis v. R.A. Brooks Trucking, Co. (In re Quebecor World (USA), Inc.)*, 491 B.R. 379, 385 (Bankr. S.D.N.Y. 2013) (Trustee has the burden of proving factors 2-6).

To avoid and recover the Post-Petition Transfers under section 549 of the Bankruptcy Code, the Trustee must demonstrate: (i) a transfer occurred; (ii) after the commencement of the case; (iii) the transfer was made without Court authority; and (iv) the property transferred was property of the estate. *Motors Liquidation Co. Avoidance Action Tr. v. JPMorgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 596 B.R. 774, 780-81 (Bankr. S.D.N.Y. 2019) (citing 11 U.S.C. § 549).

As relevant, the Defendant asserts the following affirmative defenses to the Trustee's claims: the new value defense; the ordinary course of business defense; the contemporaneous exchange defense; the earmarking doctrine; payment of priority wage-claims; and set-off and credit for contributions or claims against the Debtor (including secured claims). Answer ¶¶ 67-72. Based on the face of the affirmative defenses, if the Defendant was successful in establishing any of the defenses, it would negatively impact the Trustee's chances of recovery. The Court will briefly review the affirmative defenses as applicable to the Preferential Transfer claims.

Based on the Trustee's review of the Debtor's limited records and the documentation provided by the Defendant, he believes the new value defense poses some risk to the relief sought for the Preferential Transfer claims. The new value, ordinary course of business, and contemporaneous exchange defenses are affirmative defenses to the Preferential Transfer claims,

which, pursuant to section 547(c) of the Bankruptcy Code, bar recovery of any transfer for which the defense is established. *See* 11 U.S.C. § 547(c)(1)-(4). The "new value" defense arises under sections 547(c)(1), (c)(3), and (c)(4), and encompasses the contemporaneous exchange defense, which arises under section 547(c)(1). *See Piazza v. Pacific Maritime Indus. Corp. (In re George G. Sharp, Inc.)*, No. 20-10590, Adv. No. 21-1000, 2022 WL 1714178, at *4-5 (Bankr. S.D.N.Y. May 25, 2022) (noting that the "new value" concept is used in applying the defenses available under sections 547(c)(1), (c)(3), and (c)(4) of the Bankruptcy Code). For purposes of section 547, new value means "money or money's worth in goods, services or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2).

The contemporaneous exchange for new value defense under section 547(c)(1) provides that a transfer is not subject to avoidance to the extent that: "(1) the recipient of the transfer provided new value to the debtor in exchange for the transfer; (2) both the debtor and the recipient of the transfer intended the new value and the transfer to be contemporaneous; and (3) such exchange actually was contemporaneous." *Geltzer v. Fleck (In re ContinuityX, Inc.)*, 569 B.R. 29, 37 (Bankr. S.D.N.Y. 2017) (citing *Official Comm. of Unsecured Creditors of 360Networks (USA) Inc. v. U.S. Relocation Servs., Inc. (In re 360Networks (USA) Inc.)*, 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005)). Section 547(c)(3) protects certain transfers that create security interests securing new value, and section 547(c)(4) protects transfers to the extent that the creditor provided unsecured new value after each transfer. 11 U.S.C. §§ 547(c)(3)-(c)(4); *see In re George G. Sharp, Inc.*, 2022 WL 1714178, at *5 ("Section 547(c)(3) provides that a transfer that creates a security

17

interest is exempt from attack if the security interest secures 'new value' that is used to acquire property that will constitute collateral, so long as the security interest is perfected within 30 days after the debtor's acquisition of the collateral."); *Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 462 B.R. 66, 70 (Bankr. S.D.N.Y. 2011) ("The party relying on the [section 547(c)(4)] defense must show that it gave unsecured new value after the preferential transfer.").

In the Answer, the Defendant contends that no preference occurred because he filed UCC-1 liens to secure the amounts the Debtor owed to him, and therefore, he would have received the same funds post-petition. Answer ¶ 50. If the Defendant successfully demonstrates that the UCC-1 liens secure new value and were perfected within thirty days pursuant to section 547(c)(3), the corresponding Preferential Transfer may not be avoidable. Additionally, any Transfers that the Defendant demonstrates are payments of wages or salary may be barred, as "courts have held that timely payments of salary to an employee in exchange for the employee's continued services to the debtor may be excepted from recovery as contemporaneous exchanges for new value." *In re ContinuityX*, 569 B.R. at 37-38. If the Defendant can establish that he provided new value for any of the Preferential Transfers pursuant to any one of the new value defenses found in section 547, the Trustee may only recover the amount of the Preferential Transfer not offset by the new value credit, which could bar recovery completely. *See id*. at 40.

The Defendant also asserts the ordinary course of business defense under section 547(c)(2). The Defendant alleges that the Transfers were made in the ordinary course of business, consistent with his employment agreement, for compensation and reimbursement of expenses incurred for the Debtor's benefit. Answer at 2-3. A preferential transfer is in the "ordinary course of business," pursuant to section 547(c)(2), where "to the extent that such transfer was in payment of a debt

incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee; or made according to ordinary business terms." *In re Quebecor World*, 491 B.R. at 385. The test is disjunctive; it allows a defendant to prevail "by proving either the so called 'subjective' test under Section 547(c)(2)(A), or the so called 'objective' test under Section 547(c)(2)(B)." *Id.* (citing *Jacobs v. Gramercy Jewelry Mfg. Corp. (In re Fabrikant & Sons, Inc.),* No. 06-12737, Adv. No. 08-1690, 2010 WL 4622449, at *2 (Bankr. S.D.N.Y. Nov. 4, 2010)). A transfer that constitutes a payment of wages or salary is frequently excepted from avoidance actions as a transfer in the ordinary course of business. *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 118 n.22 (Bankr. S.D.N.Y. 2011). As such, if the Defendant is able to establish that any of the Preferential Transfers constitute compensation for salary or wages, the Trustee's claims to avoid such transfers may be barred by the ordinary course of business defense, in addition to the new value defense.

The Defendant asserts that the Trustee's claims are barred by the earmarking doctrine. "Earmarking" is a judicially created doctrine invoked as an equitable defense to an avoidance action. *Doyaga v. Fitoussi (In re Gilad)*, No. 1-20-43233, Adv. No. 1-22-01071, 2023 WL 5740203, at *10 (Bankr. E.D.N.Y. Sept. 3, 2023). It applies where a third party lends money to the debtor that is "earmarked" for the specific purpose of paying a selected creditor. *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 97 F.3d 22, 28 (2d Cir. 1996); *In re Maxwell Newspapers, Inc.*, 151 B.R. 63, 70 (Bankr. S.D.N.Y. 1993) ("[I]f property transferred by the debtor in payment of a debt was never truly within the control of the debtor or subject to the debtor's direction, then a transfer of such property would not be a preference.").

To establish the earmarking doctrine defense, the Defendant must show:

> (1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,
>
> (2) performance of that agreement according to its terms, and
>
> (3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

*In re Flanagan*, 503 F.3d at 184-85. The doctrine will only protect a transfer from avoidance to the extent it did not diminish the debtor's estate. *Id.* at 185. The Defendant claims that certain Transfers were not property of the Debtor because the Debtor received the funds from Reggiani SpA, which were "earmarked" for payments to be made by the Debtor, including payments to the Defendant. Answer ¶ 46. If the Defendant successfully establishes certain Transfers were of earmarked funds, the Trustee's claims for avoidance and recovery of each such Transfer might fail.

Although not a major factor, the Trustee has since considered the application of section 547(j) as a defense to the Preferential Transfers. Section 547(j) was enacted in response to the Covid-19 pandemic, as part of the Consolidated Appropriations Act. 5 Collier on Bankruptcy ¶ 547.03A (16th ed. 2025) (citing Pub. L. No. 116-260 (2020), effective Dec. 27, 2020). It provides that a trustee may not avoid a preferential transfer for certain "covered" payments of arrearages that were made pursuant to a deferral agreement. *See* 11 U.S.C. § 547(j) (2020) (amended Dec. 27, 2022); *see also Gentle v. Direct Energy, LP (In re Port Neches Fuels, LLC)*, No. 22-10500, Adv. No. 23-50614, 2024 WL 3462298, at *2 (Bankr. D. Del. July 18, 2024) (addressing defendant's assertion of "the defense provided under § 547(j) for payments made under agreements to pay supplier arrearages"). The provision expired on December 27, 2022, but continues to apply to bankruptcy cases filed prior to that date. 5 Collier on Bankruptcy ¶ 547.03A.

It is unrefuted that the Trustee considered and analyzed the potential risks and effects of the defenses asserted against his avoidance claims. The Trustee acknowledged the risk associated with the new value defense as an important factor in his analysis. As to the Post-Petition Transfers claim, the Trustee evaluated that his chances of success were high because there was no authorization for the payment of any post-petition expenses, although, he recognizes that there may be an argument regarding the alleged priority wage claim defense. In that light, there is certainly risk in litigating the claims and uncertainty in the Trustee's chances of success. *See O'Connell v. Packles* (*In re Hilsen),* 404 B.R. 58, 74 (Bankr. E.D.N.Y. 2009) (finding the first factor favored approval of settlement where "[i]n order to recover, the Trustee must overcome several substantial legal and evidentiary hurdles, any of which, standing alone, could be a complete bar to recovery"). The Complaint sought recovery of $978,586.07 in Transfers, encompassing fraudulent conveyance claims spanning several years and preference and post-petition transfer claims. However, based on the Trustee's litigation analysis, informed by the Defendant's production of documentation, including employment agreements and other supporting materials, the Trustee narrowed his focus to the Preferential Transfers totaling $185,166.56 and the Post-Petition Transfers totaling $65,482.96, representing approximately $250,649.52 in potential recovery before considering defenses and credits.

The Court agrees with the Trustee that his assessment of litigation risks reveals multiple challenges that could impair recovery, and considering the Trustee's business judgment, the Court finds that the amount of the Settlement Payment is reasonable "given the likelihood of the success of the litigation." *In re 305 E. 61st St.*, 2022 WL 16749111, at *3; *see Newman v. Stein,* 464 F.2d at 693, 698 (finding settlement for one seventh of the amount of potential recovery was not unreasonable based on the relevant facts); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994)

("in assessing the fairness of the settlement, a judge does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery"); *In re Stone Barn*, 405 B.R. at 76 (finding that, although the benefits of the settlement were "not enormous in the context of these cases, they are more than sufficient when compared with the Debtors' chances of success in litigation"). The Trustee estimates that litigation expenses will be $125,000, which would significantly reduce any recovery. The benefit of prompt, certain payment and resolution of the Adversary Proceeding, as well as the avoidance of litigation risks, including its costs and delays, represents a prudent resolution that preserves value for the estate while avoiding the possibility that litigation could yield a net recovery less than the Settlement Payment. Accordingly, the first Iridium Factor weighs in favor of approval of the Settlement Agreement. *See In re Roman Catholic Diocese of Rockville Ctr.*, 665 B.R. 71, 86 (Bankr. S.D.N.Y. 2024) (finding the first factor satisfied where "future benefits are clear and evident—they provide an immediate and certain resolution while avoiding further delay of distributions to creditors").

**(2)** **The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**

The likelihood of complex and protracted litigation without a settlement is evident based on the record. The Trustee estimates that continuing litigation would take seven to twelve months and incur approximately $125,000 in expenses. As discussed, the Trustee has asserted six causes of action against the Defendant, and the Defendant has asserted ten affirmative defenses. As the Defendant notes, the Trustee will have the burden of proving the elements of his claims for each Transfer. Rule 26 Report ¶ B(1); *see* 11 U.S.C. § 547(b) (the Trustee must establish the elements for "each transfer"); *Geron v. Cent. Park Realty Holding Corp. (In re Nanobeak Biotech Inc.),* 656 B.R. 350, 362–63 (Bankr. S.D.N.Y. 2024) (claim proponent must show the elements of a NY DCL fraudulent transfer claim); *In re Motors Liquidation Co.*, 596 B.R. at 780 (citing 11 U.S.C. § 549)

(trustee must demonstrate the elements to establish a claim for post-petition transfers). Litigating the elements of the claims and defenses for each Transfer will certainly result in additional expenses, inconvenience, and delay.

The matters at issue in the Complaint and the Defendant's affirmative defenses are fact-intensive and, according to the Trustee, will require extensive discovery. *See, e.g.*, *Silverman v. Actrade Cap., Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 803 (Bankr. S.D.N.Y. 2005) ("Whether fair consideration has been given in any circumstance is fact-driven . . . ."); *Jalbert v. Flom (In re BICOM NY, LLC),* 633 B.R. 25, 46, 50-51 (Bankr. S.D.N.Y. 2021) (stating first that, with respect to NY DCL § 273, insolvency is a question of fact determined under the circumstances of each case, measured on each date of the transfers being challenged, and second, that to prove a claim under NY DCL § 275, "the Trustee must show that at the time of each challenged transfer the relevant Debtor had a subjective belief that it was incurring or would incur debts beyond its ability to pay as they matured"); *Halperin v. Morgan Stanley Inv. Mgmt., Inc. (In re Tops Holding II Corp.)*, 646 B.R. 617, 661 (Bankr. S.D.N.Y. 2022) (the test for "unreasonably small capital" involves the debtor's assets at the time of the transaction and consideration of an array of factors to determine if insolvency was inevitable in the reasonably foreseeable future). The Trustee and the Defendant engaged in informal and formal discovery for months prior to the filing of the Defendant's Answer to the Complaint and have since exchanged additional documentation. However, the Trustee states that, absent a settlement, the Parties will still be commencing the early stages of discovery. As the Defendant resides overseas, the Trustee notes logistical issues of serving interrogatories and taking the Defendant's deposition, and the associated cost and delay. Moreover, the Debtor's records were limited, requiring the Trustee to rely substantially on the Defendant to provide documentation supporting his defenses, a dynamic that has already

protracted the informal discovery process and may continue to complicate formal discovery proceedings.

The Defendant has indicated that he may seek dismissal of the Complaint, Rule 26 Report ¶ B(2), which would require additional motion practice and hearings before reaching the merits of the underlying claims, further extending the litigation timeline and increasing costs. Moreover, even if the Trustee is successful in litigating the Transfers, he has demonstrated there are risks and costs that will be associated with enforcing and collecting on a judgment because the Defendant resides overseas, and has represented through counsel that he has retired and has limited financial resources. Motion ¶ 16.

Based on the issues discussed in connection with the first Iridium Factor, the discovery issues, litigation costs, and attendant delays, there is a high likelihood of complex and protracted litigation if the Trustee does not settle the Adversary Proceeding. The Court finds this factor weighs in favor of approval of the Settlement Agreement. *See In re Allard*, 2021 WL 2546668, at *8 (finding the second Iridium Factor weighed in favor of approval of settlement where "the potential disputes . . . could significantly delay the administration of the Estate and result in additional administrative expenses").

**(3) <u>The paramount interests of the creditors and the degree
 to which creditors support the proposed settlement</u>**

The Trustee contends that the settlement is in the best interests of the Debtor's estate and its creditors because it "represents a fair recovery to the estate on account of the Transfers based on all the information available to the Trustee, including the strength of the Defendant's defenses and the potential costs and risks of protracted litigation." Motion ¶ 16. The Trustee asserts that the amount of the Settlement Payment is reasonable when measured against the contested Preferential Transfer amount of approximately $185,000, the substantial affirmative defenses asserted, and the

risk that litigation expenses could exceed net recovery to the estate. None of the creditors have expressed support or opposition to the Settlement Agreement. In a chapter 7 case, settlement "promotes the paramount interests of the creditors in receiving prompt distributions from the estate without incurring further litigation expenses that would diminish the estate." *In re Kerner*, 599 B.R. 751, 756-57 (Bankr. S.D.N.Y. 2019); *see In re 305 E. 61st St.*, 2022 WL 16749111, at *3 ("it is in the best interest of all the creditors that the settlement happen now instead of a long and protracted litigation where such litigation could dissipate the very funds that would be used to pay creditors"). In light of the totality of the claims and the estate's current assets, the Court finds that the Settlement Agreement is in the best interests of the creditors because it provides for prompt payment of the Settlement Payment funds to the Debtor's estate, and avoids the risks and expenses involved with litigation. Therefore, this factor weighs in favor of approving the Settlement Agreement.

**(4) Whether other parties in interest support the settlement**

No responses were filed to the Motion. As no parties in interest have supported or opposed the Settlement Agreement, this factor is neutral.

**(5) The competency and experience of counsel supporting the settlement**

The Parties were represented by competent counsel throughout the extensive negotiations in the settlement process. In the Settlement Agreement, "[t]he Parties represent and acknowledge that they have conferred with and are represented by or have been given the opportunity to confer with or be represented by independent legal counsel of their choice with respect to this Agreement and all matters covered by or related to its subject matter." Settlement Agreement ¶ 9. As the Court has no reason to question to question the competency of counsel supporting the settlement, this factor weighs in favor of approval. *In re Roman Catholic Diocese*, 665 B.R. at 87 ("The

competency of counsel has not been questioned by any party, and the Court has no reason to think otherwise. Accordingly, the Court concludes that the [fifth] *Iridium* Factor weighs in favor of approval.").

## (6) <u>The nature and breadth of releases to be obtained by officers and directors</u>

The Settlement Agreement provides the following releases:

> 5.   <u>Release by the Trustee and the Debtor's Estate</u>. Upon (i) entry of the Approval Order, and (ii) receipt in full of the Settlement Payment, the Trustee, the Debtor, the Debtor's estate, their successors, assigns and predecessors, hereby release and forever discharge the Defendant from all claims and causes of action arising under sections 502, 541, 542, 544, 547, 550, and 551 of the Bankruptcy Code solely relating to the Transfers, provided that the foregoing release shall not limit nor be deemed to limit the rights of the Trustee to enforce this Agreement in accordance with its terms.

> 6.   <u>Release by the Defendant</u>. Upon the Trustee's receipt in full of the Settlement Payment, the Defendant, his successors, assigns and predecessors, hereby release and forever discharge the Trustee and his professionals, the Debtor, and the Debtor's estate from any and all claims relating to the Transfers, including those arising under section 502(h) of the Bankruptcy Code, for or on account of, the Settlement Payment. The Defendant shall not file any proofs of claim in the Debtor's case as a result of making the Settlement Payment.

Settlement Agreement ¶¶ 5-6. Given the amount and source of the Settlement Payment, the releases are reasonable. *See In re Soup Kitchen Int'l*, 506 B.R. at 45; *see In re Residential Cap., LLC*, 497 B.R. 720, 750 n.15 (Bankr. S.D.N.Y. 2013) ("These releases are consistent with those approved in other cases in this District, providing only for voluntary releases by the non-debtor Settlement Parties."). The Court finds the releases to be appropriate in nature and in scope, as they are narrowly tailored and, based on the extensive negotiations, necessary to reaching an agreement. *In re Ambac Fin. Grp.*, 457 B.R. at 307. There has been no objection to the releases, and therefore, this factor weighs in favor of approval.

**(7) <u>The extent to which the settlement is the product of arm's length bargaining</u>**

There is no doubt that the Settlement Agreement "is the product of extensive, hard-fought, good faith, arms' length negotiations." *In re Stearns Holdings*, 607 B.R. at 793. The Trustee and the Defendant have provided the Court with multiple status letters evidencing their negotiations since the inception of the Adversary Proceeding. There have been various settlement offers made by both Parties and meaningful discovery.[20] No party has argued that the settlement is not the product of good faith bargaining. Moreover, the Settlement Agreement provides that "[t]he Parties agree that each of them has had a full opportunity to participate in the drafting of this Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against any Party." Settlement Agreement ¶ 12. Because there is no evidence in the record indicating that the settlement was not the result of arms' length negotiations, this factor weighs in favor of approval of the Settlement Agreement. *In re Adelphia Communs. Corp.*, 368 B.R. 140, 246 (Bankr. S.D.N.Y. 2007) (finding that the seventh Iridium Factor supports approval of the settlement where "the proposed settlement was the result of a vigorously negotiated process").

Based upon the facts set forth in the record, the Court finds that the Trustee has demonstrated that the application of the Iridium Factors supports approval of the Settlement Agreement. The Court credits the Trustee's business judgment and finds that the settlement falls well within the range of reasonableness. The Settlement Agreement is fair, equitable, and in the best interests of the Debtor's estate. Pursuant to Rule 9019, the Court approves the Settlement Agreement.

---

[20] *Joint Status Letter in connection with initial pretrial conference on November 13, 2024,* AP ECF No. 18 ("Prior to the November 13th conference, the Trustee extended a settlement offer to the defendant as well as a request for further documents in support of Mr. Savoretti's alleged defenses."); *Joint Status Letter*, AP ECF No. 23 ("In the last two weeks, Defendant's counsel served me with an offer of judgment (which remains open) and a number of formal discovery requests.").

## **<u>CONCLUSION</u>**

Based on the foregoing, the Court grants the Motion. The Trustee is directed to submit an

order.

IT IS SO ORDERED.

Dated:  June 26, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge